IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TYRONE HOSPITAL ) | Case No. 06- 70759 BM JAD |
| ) | Doc. # 466 |
| ) | Chapter 11 |
| Debtor ) | |
| ) | Related To Doc. # 446 |
| ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER OF COURT

AND NOW, to wit, this 10th day of June, 2010, the Debtor-In-Possession and the United States of America, Department of Health and Human Services, the United States of America, and First National Bank of Pennsylvania, successor in interest to Omega Bank having agreed to certain modifications to the pending Plan as regards the treatment of their claims, which treatment modifications are set forth in this Order as Amendments To The Plan Of Reorganization Of Debtor-In-Possession Dated March 1, 2010, the Court having held hearing on the confirmation of the pending Plan, As Amended, in this matter, and having considered all matters duly raised at said hearing, **IT IS HEREBY ORDERED, ADJUDGED, FOUND, DETERMINED AND DECREED** that:

1. The definition of the Class 3 Claim of First National Bank of Pennsylvania, successor in interest to Omega Bank, shall be modified to provide as follows:

"3. <u>CLASS 3</u>- Class 3 is the allowed secured claim of First National Bank of Pennsylvania, successor in interest to Omega Bank ("FNB") upon its term loan dated December 13, 2004, in the original principal amount of $300,000. It is secured by an assignment/security interest in the Collateral Investment Account(s)/ Collateral Assignment Account(s) of the Debtor at FNB, as well as a Mortgage dated December 13, 2004 in the face amount of $300,000, which Mortgage was recorded December 14, 2004, in the Recorder of Deeds Office of Blair County at R.B.V. 1963, at page 846. The balance due at the time of the commencement of the case was $286,850.00."

2. The treatment of the Class 3 Claim shall be amended to provide that the treatment of Class 3 under the Plan shall be as follows:

"Class 3 shall, on the Effective Date, retain its first position lien/assignment/security interest currently held against

the Collateral Investment Account(s)/ Collateral Account(s) and their proceeds (as well as any conversions of said account(s) into a different mode (e.g., from the investment account to a Certificate of Deposit, savings account, money market account, etc), as well as its Mortgage dated December 13, 2004 in the face amount of $300,000, which Mortgage was recorded December 14, 2004, in the Recorder of Deeds Office of Blair County at R.B.V. 1963, at page 846, and the obligation shall, until paid in full, accrue interest at a floating rate of 2% over the interest rate being earned on the collateral investment account(s)/collateral account(s) of the Reorganized Debtor maintained at FNB as additional security for the allowed Class 3 claim, with an interest rate floor of 4%, from the Effective Date until paid in full regardless of default, maturity, the entry of judgment, or any similar event, it being agreed that said obligation may be paid off in full at any time without prepayment penalty of any kind.

The Reorganized Debtor shall execute such documents as FNB shall reasonably request to evidence the security interest and to perfect the same as required by applicable law.

Except to the extent modified herein, all other terms and conditions of the loan documents for the Class 3 claim shall remain in full force and effect, including the monthly payment."

3. The definition of the Class 8 Claim of the United States of America, Department of Health and Human Services shall be modified to provide as follows:

"8. Class 8 – Class 8 consists of the agreed upon administrative claim(s) of the Department of Health and Human Services ("HHS") resulting from (i) the assumption by the Debtor of the Medicare Provider Agreement and the resulting transformation of overpayments for the pre-petition period into administrative claims by virtue of the assumption on the Effective Date of the Medicare Provider Agreement and (ii) the overpayments resulting from post-petition overpayments by HHS to the Debtor for services rendered under the Provider Agreement, which are administrative claims."

4. The treatment to be accorded to the Class 8 Claim(s) of HHS shall be amended to provide as follows:

"Tyrone has a Health Insurance Benefit Agreement (Provider Agreement) with the Secretary which enables it to receive Medicare payments from the Secretary for services provided to Medicare beneficiaries at its hospital and related sub-unit under provider number 39-1307 (formerly provider number 39-0152). The terms of the Provider Agreement are incorporated herein by reference as fully as if set forth at length herein.

Tyrone wishes to continue its participation as a Medicare provider in accordance with the terms of the Provider Agreement.

On or about August 13, 2007, the debtor's Medicare Administrative Contractor (MAC) determined that it had overpaid the debtor $222,934 for the fiscal year ending on 6/30/07 under the Medicare Provider Agreement. The current balance on this debt is $198,334.

On or about November 2, 2007, the debtor's MAC determined that it overpaid the debtor $313,801 for the fiscal year ending on 6/30/06 under the Medicare Provider Agreement. The current outstanding balance on this overpayment is $284,537.

Tyrone believes that it is in its best business interest to continue to participate in the Medicare program in accordance with the terms of the Provider Agreement, and Medicare statutes, regulations, policies and procedures. Tyrone believes that it can continue normal financial operations subject to the terms of this Plan Treatment.

As of the Effective Date of Tyrone's Plan of Reorganization, As Amended by this Order ("Plan"), Tyrone assumes its Medicare Provider Agreement. The required cure is set out in the following paragraphs.

The currently outstanding overpayments will be recovered, as follows:

(a) The amount of the known overpayments outstanding and due by Tyrone to the Department of Health and Human Services ("HHS") as of April 1, 2010 were $520,696.00;

(b) The amount of known underpayments outstanding and due by HHS to Tyrone as of April 1, 2010 were $162,853.00;

(c) HHS shall apply $37,825.00 of the known underpayment outstanding as of April 1, 2010 to the overpayment obligation on the Effective Date of the Plan;

(d) HHS shall, on the Effective Date of the Plan, remit the balance of the known underpayments outstanding as of April 1, 2010, which will be $125,028.00 after the application of the provisions of subparagraph (c) supra, to Tyrone;

(e) Tyrone has continued and shall continue, for the months of April, May and June of 2010, to make its monthly "recoupment/setoff" payment of $11,075.00 to HHS to reduce the known overpayment obligation as of April 1, 2010;

(f) After payment/ application of the amounts provided for in subparagraphs (c) and (e) supra, the outstanding balance on the known overpayment obligation as existed on April 1, 2010 shall be reduced to $449,646.00;

(g) Commencing in July of 2010, the outstanding balance of

3

the known overpayment obligation as existed as of April 1, 2010, which shall, as provided for in Paragraph 2(f), be $449,646.00 after payment/application of the amounts provided for in Paragraphs 2(c) and (e) supra, shall be repaid at 0% interest at the rate of $13,626.00 per month, until the remaining known overpayment balance as existed as of April 1, 2010 shall be repaid in full, it being projected that said payment schedule shall require said payments to be made for 33 months.

(h) Should the MAC determine any additional underpayment during the course of the above-specified repayment schedule, it will be apply ½ of the determined underpayment to reduce the number of payments required and refund ½ to Tyrone.

With the sole exception of the terms set forth in subparagraphs (a)-(h) above, the Provider Agreement shall be governed exclusively by the Medicare statute, regulations, policies and procedures. The Provider Agreement shall not be subject in any manner to, or limited in any manner by, any provisions of the Bankruptcy Code or Rules. Thus, for example, if the Secretary determines any additional Medicare overpayments to Tyrone after the effective date of the Plan (whether for prepetition services, postpetition services, or services provided after the Effective Date of the Plan), the Secretary may recover any such overpayments in accordance with the Medicare statutes, regulations, policies and procedures.

In the event Tyrone terminates business operations or ceases to provide services to Medicare beneficiaries, it shall immediately notify its MAC of such event. In addition, its counsel shall send notice, within 2 business days, via e-mail or facsimile, to counsel for the Secretary (including both Agency and Department of Justice counsel).

In the event Tyrone terminates business operations, or ceases providing services to Medicare beneficiaries, the Secretary will be relieved of the provisions of subparagraphs (a)-(h) supra, and shall be free to recover any outstanding Medicare overpayments made to Tyrone from any Medicare payments otherwise due to Tyrone, without regard to, and free from any restraints imposed by, the Bankruptcy Code or this Plan.

In the event of a sale of Tyrone's hospital or any sub-unit, the purchasing party shall accept assignment of Tyrone's Medicare provider agreement, in accordance with the Medicare statute, regulations, policies and procedures. In so doing, it will assume responsibility for any outstanding Medicare overpayments remaining due by Tyrone, and/or any overpayments which may be determined thereafter. All other provisions of the Medicare statute, regulations, policies and procedures will apply to such a sale.

This treatment of the Class 8 Claim is the full and complete agreement of the parties as to its treatment, and this agreement may not be modified or altered in any manner, except by written agreement of all the Reorganized Debtor and HHS.

Each party agrees that it fully participated in the drafting of this agreement. The rules of law which provides that ambiguities will be construed against the drafting party in interpreting written instruments shall not be applicable to or used in resolving any dispute over the meaning or intent of this Plan treatment of the Class 8 claim or any of its provisions.

This Plan treatment is binding upon the Reorganized Debtor and HHS, their successors and assigns. Only those parties may enforce the terms of this Plan treatment as to the Class 8 Claimant and Reorganized Debtor, and the terms of this Plan treatment creates no rights in any third parties.

This Plan treatment exclusively resolves any claims between HHS, CMS and Tyrone related to Tyrone's Medicare participation. It does not constitute a waiver of any other rights or remedies available to the any other component of the United States Department of Health and Human Services, or any other agency of the United States, that are not expressly stated in this Plan treatment of this Plan.

5. The treatment to be accorded to the Class 15 Claim of the United States of America shall be amended to provide as follows:

"Tyrone Hospital ("Hospital") is a Pennsylvania health care provider located in Tyrone, Pa. Tyrone Medical Associates ("TMA") is a wholly owned subsidiary of Tyrone Hospital that is not currently operating and is defunct.

Hospital submitted or caused to be submitted claims for payment to the Medicare Program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. Sections 1395-1395ggg (1997). The United States contends that it has certain civil claims against the Hospital under federal statutes and/or common law doctrines, for having engaged in the following conduct: during the period from January 1, 1994 to December 31, 1999, in submitting for payment through the Medicare Program inappropriate claims for radiological services and submission of non-allowable costs for employee benefits expenses and facilities maintenance on the Hospital's Cost Reports (hereafter referred to as the "Covered Conduct"). The United States also contends that it has certain administrative claims against the Hospital under the provisions for civil monetary penalties, 42 Pa. U.S.C. Sections 1320a-7a, for the Covered Conduct.

Hospital does not admit the contentions of the United States as set forth supra, and contends that its conduct at all times was lawful and appropriate.

In order to avoid the delay, uncertainty, inconvenience,

and expense of protracted litigation of these claims, Hospital and the United States have reached a settlement of their dispute and have agreed to the resolution of the treatment to be accorded to the Class 15 Claim of the United States as set forth infra.

    (a) Hospital shall pay to the United States, separate and apart from any other party, a total of $75,000.00 (the "Settlement Amount") as follows: Hospital agrees to make a single payment in the amount of $75,000.00 by estate check made payable to the United States Department of Justice and mailed to the Financial Litigation Unit, attention Patricia Alberti, U.S. Attorney's Office for the Western District of Pennsylvania, 700 Grant Street, Suite 4000, Pittsburgh, PA, 15219. The Hospital agrees to pay the Settlement Amount on the Effective Date of the Plan of Reorganization of the Debtor-in-Possession. No other individual or entity associated with Civil Action No. 04-57 Johnstown, United States District Court for the Western District of PA, shall share any of these proceeds.

    (b) Subject to the exceptions in subparagraph (c) infra, in consideration of the obligations of the Hospital to the United States as regards its Class 15 Claim as set forth in this Plan, As Amended, conditioned upon Hospital's payment of the Settlement Amount, and subject to (i) infra (concerning bankruptcy proceedings), the United States (on behalf of itself, its officers, agents, agencies and departments) agrees to release Hospital and TMA from any civil or administrative monetary claim that the United States has or may have under the Civil Monetary Penalties Law, 42 U.S.C. Section 1320a-7a; or the common law theories of payment by mistake, unjust enrichment, breach of contract and fraud, for the Covered Conduct.

    (c) Specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including Hospital, TMA, their current and former parent corporations, owners, officers, directors, affiliates, and the successors and assigns of any of them) are any and all of the following:

        (i) Any civil, criminal or administrative claims arising under Title 26 of the U.S. Code (Internal Revenue Code);

        (ii) Any criminal liability;

(iii) Except as explicitly stated in this Plan Treatment as to the Class 15 Claim, any administrative liability, including mandatory and permissive exclusion from federal health care programs;

(iv) Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

(v) Any claims based upon such obligations as are created by this Agreement.

(d) Hospital fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney fees, costs, and expenses of every kind and however denominated) which Hospital has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

(e) The amount that Hospital must pay under this Agreement by estate check pursuant to subparagraph (a) supra, will not be decreased as a result of any denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any State payer related to the Covered Conduct; and Hospital agrees not to resubmit to any Medicare carrier or intermediary or any State payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

(f) Hospital covenants to cooperate fully and truthfully with the United States' investigation, if any, of individuals and entities not specifically released by this Plan treatment, for the Covered Conduct. Upon reasonable notice, Hospital will make reasonable efforts to facilitate access to, and encourage the cooperation of, its directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals, and will furnish to the United States, upon reasonable request, all non-privileged documents and records in its possession, custody, or control relating to the Covered Conduct.

(g) The matters provided for herein as to the Class 15 treatment and the claims being resolved hereby is intended to be for the benefit of the United States, Hospital and TMA only, and by these terms the United States, Hospital and TMA do not release any claims against any other person or entity.

(h) Hospital agrees that it will not seek payment for any of the health care billings covered by the Agreement of the parties set forth in the portion of this Plan dealing with Class 15 treatment from any health care beneficiaries, or their parents, or sponsors. Hospital waives any causes of action against these beneficiaries, or their parents, or their sponsors based upon claims for payment covered by the agreement(s) of the United States, Hospital and TMA reflected herein.

(i) Hospital is currently under the protection of the law relating to bankruptcy, and/or reorganization or relief of debtors, and Hospital agrees as follows:

    (a) Hospital's obligations under the Agreements of the United States and Hospital reflected herein may not be avoided pursuant to 11 U.S.C. Section 547, and Hospital will not argue or otherwise take the position in any such case, proceeding or action that:

        (i) Hospital's obligations under the agreements of the United States and Hospital reflected herein, may be avoided under 11 U.S.C. Sections 547 or 548;

        (ii) Hospital was insolvent at the time the parties entered into the agreements reflected herein, or became insolvent as a result of the payments made to the United States hereunder; or

        (iii) the mutual promises, covenants, and obligations set forth in this Plan as between the United States and Hospital as regards the matters provided for herein do not constitute a contemporaneous exchange for new value given to Hospital.

(b) In the event that Hospital's obligations hereunder are avoided pursuant to 11 U.S.C. Sections 547 or 548, the United States, at its sole option, may rescind the releases agreed to in this Plan regarding Covered Conduct, and bring any civil and/or administrative claim, action, or proceeding against Hospital for the claims that would otherwise be covered by the releases provided for in subparagraph (b) supra. If the United States chooses to do so, Hospital agrees that (i) any such claims, action, or proceedings brought by the United States (including any proceeding to exclude Hospital from participation in Medicare, Medicaid, or other federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. Section 362(a) as a result of the action, case, or proceeding described in the first clause of this subparagraph, and that Hospital will not argue or otherwise content that the United States' claims, actions, or proceedings are subject to an automatic stay; and (ii) that Hospital will not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings which are brought by the United States within 60 calendar days of written notification to the Hospital that releases herein have been rescinded pursuant to this subparagraph, except to the extent that such defenses were available on the date of the entry of the Order Confirming this Plan;

(c) Hospital acknowledges that the confirmation of this Plan does not discharge it from any debt to the United States arising out of the Covered Conduct, and/or of a type and kind described in Title 11, United States Code, Section 523(a)(2)(A) and (2)(B), or as otherwise agreed to in writing by the United States and/or its federal agencies and Hospital, specifically including, but not

9

limited to, the treatment being provided to the Class 8 Claim by this Plan as to the assumption of the Medicare Provider Agreement and the United States, Department of Health & Human Service but also excluding any negotiated settlement with the PBGC and executed "Stipulation of Dismissal" between Hospital and the United States and/or its federal agencies in either United States Bankruptcy Court or United States District Court.

(d) Hospital acknowledges that its agreements in this subparagraph are provided in exchange for valuable consideration provided in this Section of the Plan addressing the Class 15 Claims and their treatment under this Plan.

(j) Subject to Bankruptcy Court approval of the Plan Treatment for the Class 15 Claims as provided for herein, Hospital waives and shall not assert any defenses Hospital may have to any criminal prosecution or administrative action related to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, the agreements reached and provided for in this Plan between the United States and Hospital as to the Class 15 Claims bars a remedy sought in such criminal prosecution or administrative action. Nothing in this subparagraph or any other section of this Plan regarding the treatment of the Class 15 Claims constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

(k) The United States, Hospital and TMA shall each bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of the Agreement entered into between the United States, Hospital and TMA agreeing to the treatment of the Class 15 claim as provided for herein.

(l) Hospital represents that its agreement to the matters provided for herein is freely and voluntarily entered into without any degree of duress or compulsion whatsoever and that Hospital

has been advised with respect hereto by counsel of its choice.

(m) The agreements reflected herein between the United States, Hospital and TMA in this Plan as to the treatment to be afforded to the Class 15 Claim shall be governed by the laws of the United States. The parties agree that the jurisdiction and venue for any dispute arising between and among the United States, Hospital and/or TMA as regards the Class 15 Claims or the treatment being afforded said Claims will be either in the United States District Court for the Western District of Pennsylvania or the United States Bankruptcy Court for the Western District of Pennsylvania. Nothing provided for herein is meant to contravene the application of the United States Bankruptcy Code and/or the Bankruptcy Rules.

(n) The treatment to be afforded to the Class 15 Claims [of the United States] as set forth herein represents the complete agreement between the parties as to the treatment of the Class 15 Claims. The treatment of the Class 15 Claim [of the United States] may not be amended except by written consent of the parties and the approval of the Bankruptcy Court.

(o) The treatment to be afforded the Class 15 Claims provided for herein shall be effective as of the Effective Date of the Plan, and the terms hereof shall be binding upon the parties hereto, and their successors, transferees, heirs, and assigns.

6. The Plan Of Reorganization Of Debtor-In-Possession Dated As Of March 1, 2010, As Amended By The Provisions of Paragraphs 1 Through 5 Of This Order is in accord with the terms, condition, and provisions of the Code, including but not limited to Section 1129 thereof, is proposed in good faith, and is feasible and confirmable.

7. All objections to the confirmation of the said Plan, As Amended By This Order have been either amicably resolved or have been denied.

8. The Plan of Reorganization Of Debtor-In-Possession Dated As Of March 1, 2010 As Amended By The Provisions of Paragraphs 1 Through 5 Of This Order for Tyrone Hospital is therefore hereby approved and confirmed.

BY THE COURT: /s/ Jeffrey A. Deller   6-10-2010
JEFFREY A. DELLER   JEFFERY A. DELLER
UNITED STATES BANKRUPTCY JUDGE

JRW/Laptop III/Tyrone Hospital/Order Amending And Confirming Plan Dated March 1, 2010/6-5-2010

FILED
JUN 10 2010
CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

12